IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action:  1:20-CV-1000

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| and | ) ) |
| JEAN PERRY, | ) INTERVENOR'S COMPLAINT ) |
| Plaintiff-Intervenor | ) ) |
| v. | ) ) ) |
| STRATEGIC EQUIPMENT, LLC D/B/A TRIMARK FOODCRAFT, LLC, | ) ) ) |
| Defendant. | ) |

_____

Plaintiff-Intervenor, Jean Perry, complaining of Defendant, alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff-Intervenor institutes this action pursuant to: (a) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.*, *as amended*; and (b) the public policy of North Carolina, N.C. Gen. Stat. § 143-422.2.  Plaintiff-Intervenor seeks declaratory and injunctive relief to recover damages for the violation of her protected rights.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §

1

12117(a), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1331, and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

2. Plaintiff-Intervenor resides in, the acts complained of occurred within, and Defendant transacts business in the Middle District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff-Intervenor, Jean Perry, is a resident of Forsyth County, North Carolina. At times pertinent to this action, Plaintiff-Intervenor was an "employee" of Defendant within the meaning and definition of the ADA, 42 U.S.C. § 12111(4).

4. Plaintiff, Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendant Strategic Equipment, LLC d/b/a Trimark Foodcraft, LLC is a corporation established pursuant to the laws of the State of Delaware. Defendant has continuously done business in the state of North Carolina and the city of Winston-Salem. Defendant was the "employer" of Plaintiff-Intervenor within the meaning and definition of the ADA, 42 U.S.C. § 12111(5)(A).

## FACTS

6. Defendant met the operational needs of its Winston-Salem location in part by using employees provided by a third-party staffing agency (the "Staffing Agency").

7. On or around October 29, 2018, the Staffing Agency placed Plaintiff-Intervenor to work at Defendant's Winston Salem location as an Accounts Payable – Costing Clerk ("Costing Clerk").

8. Plaintiff-Intervenor interviewed with Defendant's Human Resource Specialist's and Accounts Payable and Costing Manager ("Costing Manager") prior to the start of her assignment with Defendant.

9. Defendant's Costing Manager provided job-specific training to Plaintiff-Intervenor.

10. Defendant's Costing Manager assigned Plaintiff-Intervenor daily work assignments.

11. Defendant's Costing Manager supervised Plaintiff-Intervenor during the day-to-day performance of Plaintiff-Intervenor's job duties at Defendant's facility.

12. Plaintiff-Intervenor used equipment provided by Defendant to perform her job duties at Defendant's facility.

13. Defendant required that Plaintiff-Intervenor adhere to Defendant's employee policies while performing work at Defendant's facility.

14. The Staffing Agency did not have a representative onsite at Defendant's facility during the period in which Plaintiff-Intervenor was assigned to work at the facility.

15. At all relevant times, Defendant was a joint employer of Plaintiff-Intervenor in relation to the work Plaintiff-Intervenor performed at Defendant's facility.

16. From the beginning of her employment until her termination, Plaintiff-Intervenor consistently performed at a superior level, meeting or exceeding all reasonable and legal expectations of Defendant.

17. On or around December 2, 2018, Plaintiff-Intervenor experienced difficulty breathing and went to the emergency room. Plaintiff-Intervenor was thereafter admitted to the hospital.

18. On or around December 2, 2018, Plaintiff-Intervenor notified the Staff Agency and the Defendant via email that she was in the emergency room and likely to be admitted to the hospital.

19. On or around December 2, 2018, Plaintiff-Intervenor was diagnosed with chronic bronchitis and emphysema.

20. Chronic bronchitis is an inflammation of the lining in the bronchial tubes that carry air to the lungs. Emphysema is a condition that causes air sacs in the lungs to weaken and/or rupture, which causes shortness of breath.

21. Because of the chronic bronchitis and emphysema, Plaintiff-Intervenor has difficulty breathing when she walks more than thirty steps, and her lungs operate at a diminished capacity. At all relevant times, Plaintiff-Intervenor's medical conditions have required daily medical treatment, including the use of an oxygen device during certain activities.

22. Plaintiff-Intervenor's emphysema and chronic bronchitis, substantially limits the major life activities of breathing and walking. Plaintiff-Intervenor's impairments also substantially limit the respiratory major bodily function.

23. On or around December 3, 2018, Plaintiff-Intervenor contacted the Staffing Agency and Defendant to inform them that she would be returning to work with a portable oxygen device, stating that she needed to ensure at discharge that her "equipment is ready to go with [her] since [she will] need it to return to work."

24. On or around December 4, 2018, Plaintiff-Intervenor provided the Staffing Agency with additional information regarding the personal oxygen device she would use on her return to work, specifically that the equipment she was bringing was a "personal oxygen device" and that she needed access to an electrical outlet to ensure that the device could function properly.

5

25. On or around December 4, 2018, the Staffing Agency provided information to Defendant about the personal oxygen device Plaintiff-Intervenor would use on her return to work.

26. In providing information regarding the personal oxygen device to Defendant directly and to Defendant through the Staffing Agency, Plaintiff-Intervenor requested from Defendant a reasonable accommodation of her disability.

27. Defendant never submitted any proposed accommodations to Plaintiff-Intervenor or attempted to engage in the interactive process. Instead, the next communication that plaintiff received was a call from the Staffing Agency that Defendant terminated her employment and not to return to work.

28. Defendant declined to provide Plaintiff-Intervenor with a reasonable accommodation (use of a personal oxygen device at Defendant's facility).

29. Defendant, upon being notified that Plaintiff-Intervenor suffered from a disability that entitled her to a reasonable accommodation of personal oxygen device, failed to engage in an interactive process with Plaintiff-Intervenor to determine if the employer and employee could agree on how the personal oxygen device could be used without posing an undue burden on the employer.

30. Upon being notified that Plaintiff-Intervenor suffered from a disability that entitled her to a reasonable accommodation, Defendant failed to engage in the

interactive process to determine if there were other reasonable accommodations available to Plaintiff-Intervenor.

31. With the knowledge that Plaintiff-Intervenor suffered from a disability that entitled her to a reasonable accommodation, Defendant terminated her employment rather than provide a reasonable accommodation.

32. Defendant could have accommodated Plaintiff-Intervenor's disability without an undue hardship on Defendant, and in a manner that would have permitted Plaintiff-Intervenor to remain employed.

**ADMINISTRATIVE REMEDIES**

33. Within 180 days of her termination, Plaintiff-Intervenor filed a Charge of Discrimination alleging disability discrimination with the Equal Employment Opportunity Commission (EEOC) in Greensboro, North Carolina.

34. On April 15, 2020, the Commission issued a Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

35. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

36. On July 13, 2020, the Commission issued a Notice of Failure of Conciliation.

37. On November 3, 2020, the Commission filed their Complaint [Doc. 1] with this Court for Defendant's violations of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991.

38. Plaintiff-Intervenor has complied with all procedural prerequisites to filing her disability discrimination claim.

## FIRST CLAIM FOR RELIEF
**Disability Discrimination in Violation of the ADA**

39. Plaintiff-Intervenor hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

40. The ADA requires that a qualified individual with a disability be reasonably accommodated to enable her to perform the essential functions of her job in the absence of proof of some undue hardship.

41. Plaintiff-Intervenor is a qualified individual with a disability because she suffered from a physical impairment, chronic bronchitis and emphysema, that substantially limited one or more major life activities, breathing and walking, and in the major bodily function of the respiratory system.

42. Plaintiff-Intervenor is a qualified individual with a disability because she had a record of a physical impairment that substantially limited one or more

major life activities, including without limitation, of breathing and walking, and in the major bodily function of the respiratory system.

43. Plaintiff-Intervenor is a qualified individual with a disability because she was regarded by Defendant as suffering from a physical impairment that substantially limited one or more major life activities, including without limitation, of breathing and walking, and in the major bodily function of the respiratory system.

44. Plaintiff-Intervenor was and is able to perform the essential functions of her job as a Costing Clerk for Defendant as long as she was reasonably accommodated with the use of her own personal oxygen device at work.

45. Defendant wrongfully and intentionally discriminated against Plaintiff-Intervenor because of her disability in violation of the ADA as follows:

   a. In failing to engage in a good-faith, reasonable, interactive process to determine reasonable accommodations that would enable Plaintiff-Intervenor to perform the essential functions of her job without posing an undue hardship on the employer;

   b. In failing to consider a temporary reassignment of Plaintiff-Intervenor to an available alternative position; and

   c. In denying Plaintiff-Intervenor a reasonable accommodation that would have permitted her to continue to work.

46. As a proximate result of Defendant's illegal acts of disability discrimination against Plaintiff-Intervenor, Plaintiff-Intervenor has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of professional reputation and quality of life; and other damages to be proven at trial.

47. As a proximate result of Defendant's unlawful intentional discrimination in violation of Plaintiff-Intervenor's rights under the ADA, Plaintiff-Intervenor has suffered substantial damages and is entitled to appropriate relief, including injunctive relief, reinstatement, compensatory damages, interest, and reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12117(a).

48. Defendant engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff-Intervenor. Accordingly, Plaintiff-Intervenor is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

**SECOND CLAIM FOR RELIEF**
**Wrongful Discharge in Violation of the Public Policy of North Carolina**

49. Plaintiff-Intervenor hereby incorporates the allegations of the foregoing paragraphs as fully set forth herein.

50. It is the public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, to protect and safeguard the right and opportunity of all persons to seek,

10

Case 1:20-cv-01000-NCT-JLW   Document 27   Filed 09/27/21   Page 10 of 13

obtain and hold employment without discrimination or abridgement on account of handicap (disability) by employers that regularly employ 15 or more employees.

51. At all times relevant to this action, Defendant regularly employed 15 or more employees in North Carolina.

52. Defendant violated the public policy of North Carolina in its termination of Plaintiff-Intervenor's employment because of her disability.

53. As a proximate result of Defendant's discharge of Plaintiff-Intervenor in violation of public policy, Plaintiff-Intervenor has suffered substantial damages, including lost income and benefits, emotional distress and mental anguish, loss of quality of life and reputation, and other damages to be shown at trial.

54. Defendant engaged in wrongful and egregious misconduct in violation of Plaintiff-Intervenor's rights which was willful and deceptive, and displayed an intentional and deliberate or reckless disregard for the rights of Plaintiff-Intervenor. Accordingly, Plaintiff-Intervenor is entitled to punitive damages in an amount to be determined by the jury.

**PRAYER FOR RELIEF**

Plaintiff-Intervenor requests the following relief:

1. To be reinstated to her position with Defendant.

2. To recover of Defendants back pay and restoration of all benefits.

11

3. To recover of Defendant compensatory damages in an amount determined by the jury.

4. To recover of Defendant punitive damages in an amount to be determined by the jury.

5. To recover the costs of this action, including reasonable attorneys' fees.

6. To recover pre-judgment and post-judgment interest on all damages awarded herein.

7. This Court enjoin Defendant from future violations of the ADA.

8. This Court grant such other relief as it deems just and proper.

## Request for Jury Trial

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff-Intervenor demands a trial by jury on all issues presented herein.

This the 27th day of September, 2021.

    Elliot Morgan Parsonage, PLLC.

    /s/Benjamin P. Winikoff
    Benjamin P. Winikoff (49625)
    Emily E. Scotton (54445)
    Counsel for Plaintiff-Intervenor
    426 Old Salem Road
    Winston Salem, North Carolina 27101
    Telephone: (336) 724-2828
    Facsimile: (336) 724-3335
    bpwinikoff@emplawfirm.com
    escotton@emplawfirm.com

## CERTIFICATE OF SERVICE

The undersigned attorneys hereby certify that they have on this date served a copy of the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following parties to this action:

**ADDRESSEES:**

Kellie Tabor – KTabor@littler.com
Kerry Notestine – KNotestine@littler.com
Littler Mendelson P.C.
Bank of America Corporate Center
100 North Tryon Street, Suite 4150
Charlotte, NC 28202
*Attorneys for Defendant*

Samuel Harrington Williams
Ylda Kopka Amy Garber
Brandon Williams
Equal Employment Opportunity Commission
Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
*Attorneys for Plaintiff EEOC*

/s/Benjamin P. Winikoff
Benjamin P. Winikoff (49625)
Elliot Morgan Parsonage PLLC
426 Old Salem Road
Winston-Salem, NC 27201
(336) 724-2828
Email: bpwinikoff@emplawfirm.com